UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
EMILSE S.,

                        Plaintiff,         <u>DECISION AND ORDER</u>
                                                1:24-CV-03732-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

     In February of 2020, Plaintiff Emilse S.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application. Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 9).

     This case was referred to the undersigned on October 8, 2024. Presently pending is Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

No. 13). For the following reasons, Plaintiff's motion is due to be granted, and this case is remanded for further administrative proceedings.

## I. BACKGROUND

### A.  Administrative Proceedings

Plaintiff applied for benefits on February 27, 2020, alleging disability beginning April 27, 2019. (T at 10, 66).[2] Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on May 8, 2023, before ALJ Angela Banks. (T at 29-56). Plaintiff appeared with an attorney and testified. (T at 37-50). The ALJ also received testimony from a vocational expert. (T at 51-54).

### B.  ALJ's Decision

On August 2, 2023, the ALJ issued a decision denying the application for benefits. (T at 7-23).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 27, 2019 (the alleged onset date) and meets the insured status requirements of the Social Security Act through December 31, 2024 (the date last insured). (T at 12).

The ALJ concluded that Plaintiff's schizophrenia spectrum disorder,

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

bipolar disorder, and anxiety disorder were severe impairments as defined under the Act. (T at 12).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: she can tolerate no more than occasional exposure to respiratory irritants, as that term is defined by the *Selected Characteristics of Occupations* in the *Dictionary of Occupational Titles* ("DOT"); she can understand, remember, and carry out simple instructions; use judgment to make simple work-related decisions; occasionally interact with supervisors, coworkers, and the public; and occasionally deal with changes in a routine work setting. (T at 15).

The ALJ concluded that Plaintiff could not perform her past relevant work as a commercial cleaner. (T at 17).

However, considering Plaintiff's age (46 on the alleged onset date), education (limited), work experience, and RFC, the ALJ determined that

there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 17-18).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between April 27, 2019 (the alleged onset date) and August 2, 2023 (the date of the ALJ's decision). (T at 18-19).

On April 5, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.   Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on May 15, 2024. (Docket No. 1). On October 28, 2024, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 13, 14). The Commissioner interposed a brief in opposition to the motion and in support of a request for judgment on the pleadings on December 31, 2024. (Docket No. 15). On January 24, 2024, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 16).

## II.  APPLICABLE LAW

### A.  *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.   Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if,

as is the case here, the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

Further, "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases). "This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

In the present case, Dr. Siddhartha Nadkarni, Plaintiff's treating neurologist, provided a letter dated September 9, 2021, in which he diagnosed bipolar 1 disorder and stated that Plaintiff was "medically disabled and unable to work." (T at 411).

The ALJ noted (correctly) that Dr. Nadkarni's conclusory statement that Plaintiff was "medically disabled and unable to work" is not entitled to any persuasive power. (T at 17). *See* 20 C.F.R. § 404.1520b(c) (statement on an issue reserved to the Commissioner, such as a statement that a claimant is or is not disabled, is evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.")

The ALJ further found that Dr. Nadkarni's objective treatment records did not "support debility from a psych or medical perspective." (T at 17).

The record also contains a letter from Dr. Leonardo Vando, a psychiatrist, who reported that Plaintiff had been treating with his office for more than six years, was diagnosed with psychotic depression and anxiety state unspecified, and was treated with prescription medication. (T at 412). Dr. Vando did not provide an assessment of Plaintiff's ability to meet the mental demands of basic work activity.

For the following reasons the Court finds that the ALJ erred by determining Plaintiff's RFC without requesting a functional assessment from Dr. Nadkarni and/or Dr. Vando.

The Second Circuit has long recognized the value of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment

9

provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the "treating physician rule" no longer applies, this principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new regulations. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 U.S. Dist. LEXIS 32884, at *28 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v))); *see also Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Here, the ALJ's determination that Plaintiff retained the RFC to meet the mental demands of a reduced range of work was based on her conclusion that the treatment record "show[ed] essentially normal findings on mental status exam …." (T at 16).

As the Commissioner concedes (Docket No. 15, at p. 17-18), however, the record documents significant symptomology, particularly during periods of increased stress. These symptoms included panic attacks (T at 290-294, 296-299, 379-383, 390-391, 481-482, 492, 574-576), self-harm (T at 43, 44, 46, 290-294, 372, 373, 392-393), hallucinations (T at 290-294, 368, 379-383, 393-394), and poor insight and judgment. (T at 89, 393-394, 481-482, 492, 500, 507-509, 515-517, 523-525, 533-535).

11

Although the record demonstrates periods of improvement and relative stability in Plaintiff's mental functioning, the ALJ overrated the relevance of Plaintiff's ability to occasionally maintain appropriate attendance and affect during brief, relatively infrequent encounters with supportive medical professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Indeed, the primary question presented is whether, and to what extent, would Plaintiff's symptoms be exacerbated if she was exposed to the demands of competitive, remunerative work on a consistent basis.

Although Dr. Nadkarni's September 2021 letter is not entitled to any persuasive power on its own, a treating neurologist's statement that he believed Plaintiff could not meet the mental demands of basic work activity, combined with the significant symptomology documented in the record, particularly during periods of stress, triggered the ALJ's duty to re-contact Dr. Nadkarni and request a functional assessment and explanation for his belief that Plaintiff could not maintain employment.

Likewise, although Dr. Vando's treatment notes are in the record, there is no evidence that the ALJ contacted Dr. Vando to obtain a functional assessment, notwithstanding Dr. Vando's statement that they should "feel free to contact us if you need additional information." (T at 412).

"It is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the … status of a patient." *Robins v. Astrue*, No. CV-10-3281 FB, 2011 WL

13

2446371, at *4 (E.D.N.Y. June 15, 2011)(quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y.1991)(emphasis original); *see also Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)(noting that "an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians")(citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

The duty to develop the record, which includes re-contacting treating physicians when needed to afford the claimant a full and fair hearing based on an adequately developed record, applies to claims governed by the new medical opinion regulations. *See, e.g., Snoke v. Comm'r of Soc. Sec.*, No. 22-CV-3708 (AMD), 2024 WL 1072184, at *9 (E.D.N.Y. Mar. 12, 2024); *Fintz v. Kijakazi*, No. 22-CV-00337(KAM), 2023 WL 2974132, at *7 (E.D.N.Y. Apr. 15, 2023); *Cheryl W. v. Kijakazi*, No. 3:22-CV-1476 (VAB), 2024 WL 1012923, at *5 (D. Conn. Mar. 8, 2024); *Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 316 (E.D.N.Y. 2023); *see also Ramos v. Comm'r of Soc. Sec.*, No. 20-CV-9436 (OTW), 2023 WL 3380660, at *2 (S.D.N.Y. May 11, 2023).

While the Court recognizes that some support for the ALJ's decision is found in the opinion of Dr. W. Amory Carr, who performed a consultative

psychiatric evaluation via videoconference in May of 2020, Dr. Carr diagnosed unspecified depressive disorder and unspecified anxiety disorder and opined that Plaintiff had no limitation in her ability to understand, remember, or apply simple or complex directions; use reason and judgment to make work-related decisions; sustain concentration and perform at consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions. (T at 292-93).

Although the Second Circuit has long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)) "[t]his concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

Moreover, Dr. Carr's assessment appears to be at odds with several aspects of his examination, including Plaintiff's report that she was terminated from employment due to excessive absences, as well as her

inability to perform serial 7s, impaired memory skills, below average cognitive functioning, and "fair" insight and judgment. (T at 290, 292).

Lastly, Dr. Carr himself believed Plaintiff had moderate impairment in her ability to interact with others, regulate her emotions, control behavior, and maintain well-being. (T at 292-93). Thus, the question is not *whether* Plaintiff's ability to meet the mental demands of basic work activity is limited, but rather to *what extent* she is so impaired. It was error for the ALJ to assess the extent of Plaintiff's limitations without seeking a functional assessment from a treating provider.

Accordingly, for the reasons discussed above, the Court finds that the ALJ erred by determining that Plaintiff's undisputed mental limitations did not preclude her from maintaining competitive, remunerative employment without further development of the record. A remand is required.[3]

B.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand for further

---

[3] Plaintiff also challenges the ALJ's assessment of her ability to maintain attention and attendance and the ALJ's step five analysis. These issues will necessarily need to be revisited on remand after further development of the record as directed above.

administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons outlined above, the Court concludes that a remand is necessary for further development of the record.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED, and this case is remanded for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: January 27, 2025

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge